**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **09-07869-jw**

**ORDER**

The relief set forth on the following pages, for a total of 11 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**08/09/2010**



*/s/ John E. Waites*
Chief US Bankruptcy Judge
District of South Carolina

Entered: 08/10/2010

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 09-07869-JW |
| Philip Baldassare Benincasa and<br>Carol Ann Benincasa, | Chapter 13 |
| Debtors. | **ORDER** |

THIS MATTER comes before the Court upon the Chapter 13 Trustee's ("Trustee") Objection to Confirmation of the Chapter 13 Plan ("Objection") of Philip Baldassare Benincasa ("Mr. Benincasa") and Carol Ann Benincasa ("Mrs. Benincasa") (collectively, "Debtors"). This Court has jurisdiction pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014, the Court makes the following findings of fact and conclusions of law.[1]

## **FINDINGS OF FACT**

1.  Debtors filed a joint petition for Chapter 7 relief on October 21, 2009. Simultaneously with the petition, Debtors filed their Schedules and Statement of Affairs.

2.  The originally filed Schedule I shows a combined average monthly income of $6,715.38, which includes a pension or retirement payment for Mr. Benincasa and income from both Debtors' part-time jobs. Schedule J lists expenses totaling $6,557.99. The deduction of these expenses from Debtors' combined monthly income yields a monthly net disposable income in the amount of $157.39.

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the following conclusions of law constitute findings of fact, they are so adopted.

3.  Debtors' Schedule F lists unsecured debts totaling over $167,000. Debts reflected by credit card balances total at least $152,000. The remaining debts include student loans totaling less than $15,000 and estimated deficiencies on vehicles.

4.  Debtors' income is above the applicable median income for the state of South Carolina.[2]

5.  On January 21, 2010, the United States Trustee ("UST") filed a Motion to Dismiss Case Pursuant to 11 U.S.C. Section 707(b)(1) Based on Presumption of Abuse Arising under Section 707(b)(2) or, Alternatively, Based on Bad Faith under Section 707(b)(3)(A) and the Totality of the Circumstances under Section 707(b)(3)(B), with Memorandum in Support of Motion, which was set for a hearing on March 16, 2010 and continued to a reconvened hearing at the request of the UST.

6.  On April 1, 2010, Debtors filed a Motion to Convert Case under Chapter 7 to a Case under Chapter 13, which was granted by Order entered April 15, 2010.

7.  James M. Wyman was appointed the Chapter 13 Trustee on April 15, 2010.

8.  On April 27, 2010, Debtors filed a Plan, Chapter 13 Statement of Income/Calculation, and amended Schedules I and J. Amended Schedule I shows that Debtors have a combined average monthly income totaling $6,128.35, which includes Mr. Benincasa's unemployment benefits, and amended Schedule J shows expenses of $5,519.49, for a total monthly net disposable income of approximately $608.

9.  On June 8, 2010, the Trustee filed an Objection to Debtors' Plan on good faith and disposable income issues. In his Objection, the Trustee asserts that some of Debtors' expenses are not reasonably necessary or are higher than reasonably necessary. The objected expenses

---

[2] Debtors report a reduced annual income of $73,540.20 in their amended Schedule I. The median income applicable to this case of the state of South Carolina is $50,823. This amount has increased twice since the filing of this bankruptcy case and is now $51,191 for bankruptcy cases filed on and after March 15, 2010 according to the information posted by the U.S. Department of Justice pursuant to the information from the U.S. Census Bureau, which can be found at www.justice.gov/ust/eo/bapcpa/meanstesting.htm.

include: $1,742 for "support of additional dependents not living in [their] home"[3]; $225 for monthly cell phone charges; $600 for food; $200 for clothing, plus $75 laundry and dry cleaning; and $400 for transportation costs.[4]

10. Mr. Benincasa's mother ("Debtor's Mother" or "Mother") is 72 years old and is a dependent of Debtors. Debtors have supported the Mother by paying her housing expenses of approximately $1000 per month for a period of approximately 15 years.

11. In 2005, Debtors purchased two townhomes on Pinehurst Lane, Pawley's Island, South Carolina: Debtors' current residence at 820 Pinehurst Lane, Unit 90C ("Unit 90C") and another unit in which Debtor's Mother currently resides, at 884 Pinehurst Lane, Unit 87C ("Unit 87C").

12. The value of each of the townhomes is virtually identical, and the first mortgages on both properties are essentially the same, but Unit 87C has less equity because of an equity line/second mortgage obtained by Debtors in 2005. Debtors exhausted the available funds from that equity line in 2007, and the second mortgage balance is now approximately $106,000, with monthly payments of $425. Debtors do not list the $425 monthly payment anywhere in Schedule J.

13. Upon the advice of bankruptcy counsel, approximately one month prior to the filing of the Chapter 7 petition, Debtors switched residences with Debtor's Mother. Debtors moved from Unit 87C to Unit 90C to maximize their claim of a homestead exemption in their real property and Debtor's Mother moved to Unit 87C.

---

[3] In their amended Schedule J, Debtors list $1,742 for "support of additional dependents not living in [their] home," identified as Debtor's Mother. This amount includes: $100 for car insurance; $320 for HOA dues and fees; $397 for car payment; and $925 for mortgage payment. It does not include the $425 second mortgage payment on the townhome in which Debtor's Mother lives. The actual expenses necessary to provide the separate home at issue for Debtor's Mother appear to include $925 for first mortgage, $425 for second mortgage, and $320 for HOA dues and fees, for a total of $1,670, which the Trustee believes is not reasonably necessary.

[4] IRS guidelines allow the following for monthly expenses: $537 for food; $162 for apparel and services; and $239 for transportation costs per vehicle.

3

14.This exchange of residences immediately before the bankruptcy filing effectively increased the costs for providing housing for Debtor's Mother by the amount of the second mortgage payment, which is approximately $425 per month.

15.Both townhomes are approximately 1,400 square feet with two bedrooms, have an identical footprint, and have access located on ground level. Debtors have no dependent children or other dependents, and since the filing of the case as a Chapter 7 case, Debtors have reported a significant decrease in their monthly income.

16.Debtor's Mother receives approximately $900 per month from social security, which is apparently used for food, electricity, supplemental health insurance, life insurance, and medical expenses.

17.Unit 87C, which is currently occupied by the Mother, requires a total monthly expense of $1,670, including $925 first mortgage, $425 second mortgage, and $320 HOA fees and dues.

18.On June 16, 2010, Debtors filed an amended Schedule J, reducing their overall reported expenses by $173 per month, and demonstrating a monthly net disposable income of $771.86.

19.Debtors presented testimony that $600 is a fair estimate of the amount they pay monthly for food for two persons due in part to Mr. Benincasa's medical condition of diabetes and high cholesterol. However, Debtors presented no documentary evidence of this expense.

20.Mr. Benincasa pays for several professional licenses in the state of Florida in the amount of $50 per month, but earns no income from any business related to the licenses. He was employed part-time at a law firm as a courier at the time of filing the Chapter 7 petition, but has since lost that job and is receiving unemployment income of $552 per month.

21.Mr. Benincasa asserts that he has looked for work in his licensed field, but that he has been unable to find work in that area since Debtors moved to South Carolina in 2005.

22. Mrs. Benincasa participates as a realtor in the Multiple Listing Service and incurs expenses associated with a realtor's license in the total amount of $57.50 per month. However, she reports no current income from that field, having last earned a commission prior to October, 2009. She receives her part-time income from her job as a receptionist.

23. Debtors estimate monthly expenses of $400 for transportation, which includes regular travel to visit relatives in Florida and other states, $200 per month for clothing, and $75 per month for laundry and dry cleaning. They also incur a monthly expense of $350 for cell phones and internet and cable.

24. On June 30, 2010, Debtors filed an Amended Plan which increases their Trustee payment from the originally proposed $512 per month to $615 per month. It proposes to pay for Debtors' 2009 Dodge Journey in full at $437 per month and indicates that Debtors are sufficiently funded to pay approximately 7.5% of the general unsecured claims.[5]

## CONCLUSIONS OF LAW

The Trustee objects to confirmation on the grounds that the following expenses of Debtors are not reasonably necessary and should be reduced or eliminated to devote all "projected disposable income" into the Plan and to warrant a finding of good faith pursuant to § 1325(a)(3) and (b)(3):[6]

1. Debtors' support of the Mother in providing a separate home at a cost of $1,670 per month.

2. Food expenses above the amount allowed by the IRS Guidelines.

3. Costs to maintain business licenses with no foreseeable income from the businesses related to those licenses.

---

[5] This estimation is according to the calculations of the Chapter 13 Trustee.
[6] The parties have narrowed the issues by virtue of a Joint Statement of Dispute filed on June 24, 2010.

    4.    Undesignated expenses resulting in the failure to pledge the difference between the monthly net disposable income on Schedule J and the proposed Plan payment.

A debtor bears the burden of proof at confirmation. See In re Utsey, C/A No. 02-08676-W, slip op. (Bankr.D.S.C. Oct. 4, 2002). Section 1325(a)(3) requires Debtors to propose their plan in good faith. See In re Edmunds, 350 B.R. 636, 648 (Bankr.D.S.C. 2006). The Court considers the totality of the circumstances to determine good faith. See id. "In Deans, the Fourth Circuit set forth a nonexclusive list of factors to determine whether a plan has been proposed in good faith. Included in this list is a debtor's current financial situation and percentage of proposed repayment to unsecured creditors." Id. at 648 (citing Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982)).

Since Debtors are above the median income for South Carolina, they are required to pay their projected disposable income for a period of 60 months pursuant to 11 U.S.C. § 1325(b)(4).[7] Section 1325(b)(3) allows for the deduction of certain actual expenses; however, those expenses must be reasonably necessary. See In re Napier, C/A No. 06-2464-W, slip op. (Bankr. D.S.C Sept. 18, 2006). "The focus of inquiry under the 'reasonably necessary' test is to ensure that a debtor is not maintaining an excessive lifestyle to the detriment of unsecured creditors." In re Namie, 395 B.R. 594, 598 (Bankr. D.S.C. 2008 (quoting In re Loper, 367 B.R. 660, 665 (Bankr. D. Colo. 2007)). Debtors bear the burden of demonstrating that an actual expense is reasonable and necessary. See Namie, 395 B.R. at 298.

I.    **Support of Elderly Family Member**

The Trustee objects to the amount and method of support offered to Debtor's Mother. Debtors assert that they have maintained separate housing for Debtor's Mother for 15 years and

---

[7]    All further references to a section are to Title 11 of the United States Code.

that it is not fair and reasonable to require Debtors to share housing with the Mother. The actual cost of the housing for the Mother appears to be $1,670 per month, which includes the $425 per month second mortgage payment on Unit 87C. Had Debtors not switched their residence prepetition in an attempt to maximize their homestead exemption, Debtors would be residing in Unit 90C with the second mortgage, and thus the $425 monthly payment would not be included as part of the cost for the Mother's housing pursuant to 11 U.S.C. § 707(b)(2)(A)(ii)(II). By electing to change their residence and protect the equity existing in Unit 90C, Debtors increased the amount necessary to provide housing support for the Mother. The amount now proposed significantly exceeds the amount historically spent.

Debtors' claim that they have been able to maintain the payments on the separate housing for Debtor's Mother along with their own housing expense is unpersuasive. The majority of their debt was obtained through the use of credit cards, totaling at least $152,000. In addition, Debtors obtained the equity line on Unit 87C, which they then used as their residence, in the amount of $106,000. While the payments on the mortgages for both properties are current, it is apparent from these debts that Debtors were not able to maintain these housing costs and living expenses over the past several years without incurring substantial additional unsecured and secured debt.

Despite a significant reduction in income since the filing of the Chapter 7 petition over 8 months ago and a decrease in their ability to pay unsecured creditors, Debtors continue to assert that $1,670 total cost per month to pay for a second home for Debtor's Mother is reasonably necessary.[8] This cost is over 27% of their stated net income. Debtors presented no evidence to show that Debtor's Mother could not live in their home, but they testified that it is not fair and

---

[8] The Court notes that the current IRS Guidelines' housing cost for Georgetown County for a one-person household is $701, as indicated on the U.S. Trustee's website at www.justice.gov/ust/eo/bapcpa/20100315/bci_data/housing_charts/irs_housing_charts_SC.htm.

7

reasonable that the Mother would have to move in with them, and that alternate separate housing for the Mother would cost at least $1,000 per month, plus utilities. Debtors provided no documentary evidence to support these statements. Debtors further testified that both townhomes are approximately 1,400 square feet with two bedrooms. The townhomes have an identical footprint, and both are located on the first floor. Debtors have no dependent children. Accordingly, the Court finds that Debtors have failed to meet their burden of proof that the maintenance of separate housing for the support of Debtor's Mother in the amount proposed is reasonably necessary.

In addition, this Court has previously denied confirmation for lack of good faith when a debtor proposes to retain an expensive piece of secured property and make a minimum distribution to unsecured creditors. See In re Allawas, C/A No. 07-06058-HB, slip op. (Bankr.D.S.C. Mar. 3, 2008) (denying confirmation for lack of good faith where debtor proposed to retain an expensive motorcycle as a second vehicle); see also Namie, 395 B.R. at 597 (denying confirmation for lack of good faith where debtor proposed a plan that provided for cure and maintenance payment of more than $5,375 per month on residential mortgage property in which he lacked any equity, while providing dividend of only 1% on general unsecured claims). Debtors' Plan provides that they will pay less than 100% to unsecured creditors. Without determining the appropriateness of Debtors' prepetition exemption planning,[9] the retention of Unit 87C at such a significant cost while paying only a small dividend to creditors indicates a lack of good faith under the circumstances of this case.[10] For these reasons, the Court concludes that the Plan in this case does not meet the disposable income and good faith standards of the

---

[9] Prepetition exemption planning regarding a debtor's residence may be disallowed if the planning was done with an intent to defraud, delay or hinder creditors. 11 U.S.C. § 522(o).

[10] The Court also observes that the amended budget does not indicate an allowance for the $425 second mortgage payment.

8

Bankruptcy Code, and therefore, the Trustee's Objection as to the support expense proposed by Debtors to enable the Mother to live in the subject separate home is sustained.

## II. Food Expenses

The Trustee asserts that the IRS Guidelines' allowance for food in the amount of $537 per month for two people is generous and sufficiently reasonable in this case even with the health issues asserted by Debtors. Debtors contest this amount with general testimony that Mr. Benincasa has medical conditions that would warrant a higher allowance for food expenses, but they have provided no evidence as to the special foods purchased, no delineation of the amounts they actually spent, and no documentary evidence to support an amount higher than the $537 IRS allowance.[11]

Debtors have not met their burden of proof on the issue of the reasonableness of the food expenses such that the Plan as filed does not meet the disposable income and good faith standards of the Bankruptcy Code. Therefore, the Trustee's Objection as to this issue is sustained.

## III. Maintenance of Business Licenses

Debtors spend a total of $107.50 per month for maintenance of certain business or professionally related licenses. Debtors report no current income or prospects of future income in the reasonably foreseeable future from the businesses related to those expenses. Debtors' testimony indicates that Mr. Benincasa has not earned income from his subject business since 2005. The Schedules indicate that Mrs. Benincasa has not earned any income from real estate commissions since before the petition was filed in October 2009.

Debtors have not met their burden of proof as to the reasonable necessity of these business expenses such that the Plan as filed does not meet the disposable income and good faith

---

[11] The Trustee has stated that he accepts this amount stated by the IRS Guidelines as reasonable in this case.

9

standards of the Bankruptcy Code. Therefore, the Trustee's Objection as to this issue is sustained.

### IV.    Other Expenses

The Court observes that Debtors further assert expenses of $400 per month for transportation, which includes travel to visit relatives in Florida and other states, $200 per month for clothing and $75 per month for laundry and dry cleaning. When considered cumulatively with their other expenses, these expenses do not appear to be reasonably necessary. Debtors presented no documentary evidence of these expenses. Furthermore, in their recently amended schedules, Debtors list a monthly net disposable income of $771. However, they propose a Plan payment of $615 per month. They argue that their income might go down, but provide no other explanation for the $156 per month difference between their monthly net disposable income on Schedule J and the proposed Plan payment.

Debtors have not met their burden of proof as to the reasonableness or necessity of any of these expenses or their failure to pledge more of their disposable income to Plan payments. Therefore, the Plan as filed does not meet the disposable income and good faith standards of the Bankruptcy Code and the Trustee's Objection as to this issue is sustained.

### Conclusion

Based upon the foregoing reasons, the Court sustains the Trustee's Objection to the Confirmation of Debtors' Plan filed on June 30, 2010 and denies confirmation of Debtors' Plan. Debtors shall propose an amended Chapter 13 plan within ten (10) days from the entry of this order or this case may be dismissed or converted on motion of the Trustee.

**AND IT IS SO ORDERED.**